ORDERED.

**Dated:  January 08, 2025**

Lori V. Vaughan
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **IN RE** | **CHAPTER 11** |
| **CELEBRATION TITLE GROUP, LLC,** | **CASE NO.: 6:24-bk-04600-LVV** |
| **Debtor.** | |

**ORDER (1) CONFIRMING AMENDED SUBCHAPTER V PLAN OF REORGANIZATION FOR CELEBRATION TITLE GROUP, LLC PURSUANT TO 11 U.S.C. §§ 1129(a) AND 1191(b), (2) GRANTING MOTION FOR CRAMDOWN, (3) ESTABLISHING DEADLINES, AND (4) SETTING FURTHER HEARING**

**THIS CASE** came on for hearing on December 18, 2024 at 11:00 a.m. (the "**Hearing**") to consider confirmation of the *Amended Subchapter V Plan of Reorganization* (the "**Amended Plan**") (Doc. No. 47) filed by Celebration Title Group, LLC (the "**Debtor**").

On November 6, 2024, the Court entered the *Order (I) Scheduling Hearing on Confirmation of Plan of Reorganization, (II) Setting related Deadlines, and (III) Setting Deadlines for Filing Administrative Expense Applications (*Doc. No. 33), which Order also set compensation and administrative claim hearing procedures, fixed a deadline of December 11, 2024 (the "**Objection**

**Deadline**") for filing objections to confirmation, fixed a deadline of December 11, 2024 for filing ballots accepting or rejecting the Plan, and deadlines for the Debtor to submit its confirmation affidavit and ballot tabulation. No objections to confirmation were filed.

Prior to the Hearing, Debtor filed its proposed *Exhibit List* in support of confirmation (Doc. No. 54) (the "**Exhibits**"), which Exhibits included:

- Exhibit 1 – *Debtor's Amended Subchapter V Plan of Reorganization*

- Exhibit 2 – *Ballot Tabulation*

- Exhibit 3 – *Confirmation Affidavit*

- Exhibit 4 –*Civil Theft Demand Letter*

At the Hearing, the Court admitted each of the Exhibits without objection. Also, during the Hearing, Debtor's counsel proffered the testimony of the Debtor's Manager, Amanda C. Douglas, in support of confirmation of the Amended Plan without objection, which testimony adopted and was consistent with the statements set forth in the Confirmation Affidavit (Exhibit 3) admitted into evidence.

Upon review and consideration of the Plan, the Exhibits, the presentation, and statements of counsel present at the Hearing, and for the reasons stated orally and recorded in open court, the Court finds and determines that the requirements of 11 U.S.C. §§ 1129(a), (b) and 1191(b) of the Bankruptcy Code have been satisfied.

Accordingly, it is **ORDERED** as follows:

1.      The Amended Plan (Doc. No. 47) is **CONFIRMED** pursuant to 11 U.S.C. §§ 1129 and 1191(b). If there is a discrepancy between the Amended Plan and this Order, this Order controls. A Final Plan of Reorganization is attached hereto as **Exhibit "A"**.

2.      Debtor's Cramdown Motion (the "Motion") (Doc. No. 53) is **GRANTED**.

3.      Debtor is authorized and directed to execute all agreements and undertake the actions contemplated by the Plan, as modified herein, and, pursuant to 11 U.S.C. § 1194, all payments required under the Plan shall be made by the Debtor notwithstanding confirmation of the Plan under 11 U.S.C. § 1129(a), (b) and 1191(a).[1] The Subchapter V Trustee shall remain in the case to monitor for performance of payments made under the Plan and may submit fee applications for time incurred monitoring the Debtor's post-confirmation obligations. On the Effective Date, Debtor shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.[2]

4.      Debtor shall file all objections to claims within ninety (90) days after the Effective Date of the Plan.

5.      Any counterparty to an executory contract or unexpired lease, which was not assumed, is directed to file any claim for rejection damages within thirty (30) days from the confirmation hearing date.

6.      The Debtor's case will remain open until entry of a final decree. While the case remains open, and in accordance with the terms of the Plan, as modified herein, Debtor will continue to file quarterly post-confirmation operating reports (the "Post-Confirmation Reports"). The Post-Confirmation Reports shall detail any progress on collections or pursuit of Causes of Action.  Additionally, fourteen (14) days prior to any distribution to any Allowed Claim under the Plan, the Debtor shall file a "Notice of Distribution" and serve it on all creditors.  The Notice of Distribution shall include the payment amount proposed to be paid to such Allowed Claim.  If any

---

[1] Pursuant to Local Rule 3020-1(c)(1) – a schedule summarizing the timing and amount of payments to be made to each class of creditors entitled to receive distributions under the Plan is attached hereto as **Exhibit "B"**.

[2] In accordance with the Plan, the term Effective Date shall mean the first Business Day following expiration of the Appeal Period with respect to the Confirmation Order without the filing of a notice of appeal of the Confirmation Order.

objection is filed to the Notice of Distribution prior to the expiration of the fourteen day notice period, the Court shall conduct a hearing on the objection.

7. The Court retains jurisdiction for any and all matters that may come before the Court in the administration of the Plan, as modified herein (including, without limitation, actions as to those matters contemplated by the Plan) and pursuant to the Order of Confirmation.

8. **A Post-Confirmation Status Conference has been scheduled before the Honorable Lori V. Vaughan for March 4, 2025 at 2:45 p.m. at the George C. Young Courthouse, 400 W. Washington Street, Courtroom 6C, 6th Floor, Orlando Florida 32801.**

**###**

Attorney Justin M. Luna is directed to serve a copy of this order on all interested parties and file a proof of service within three (3) days of entry of the order.

EXHIBIT "A"

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

**CELEBRATION TITLE GROUP, LLC,**

**CASE NO. 6:24-bk-04600-LVV**
**CHAPTER 11**

*Subchapter V Election*

Debtor.

_____/

**SUBCHAPTER V PLAN OF LIQUIDATION FOR**
**CELEBRATION TITLE GROUP, LLC**

COUNSEL FOR THE DEBTOR

JUSTIN M. LUNA, ESQ.
BENJAMIN R. TAYLOR, ESQ.
LATHAM, LUNA, EDEN & BEAUDINE, LLP
201 S. ORANGE AVE., SUITE 1400
ORLANDO, FLORIDA 32801

November 4, 2024

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

**CELEBRATION TITLE GROUP, LLC,**

                         **Debtor.**

_____/

**CASE NO. 6:24-bk-04600-LVV**
**CHAPTER 11**

*Subchapter V Election*

**AMENDED SUBCHAPTER V PLAN OF LIQUIDATION FOR**
**CELEBRATION TITLE GROUP, LLC**

**CELEBRATION TITLE GROUP, LLC** (hereinafter referred to as the "**Debtor**" or "**Celebration**"– where appropriate), by and through its undersigned counsel, hereby proposes the following *Amended Subchapter V Plan of Liquidation* (the "**Plan**") pursuant to 11 U.S.C. §§ 1189 and 1190 of the United States Code (the "**Bankruptcy Code**").

## ARTICLE I – DEFINITIONS

1.      **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case in connection with preserving the Debtor's Estate and operating the Debtor's business, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Title 28 of the United States Code.

2.      **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

2

3.      **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4.      **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

5.      **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtor with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to

3

which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

6.     **Allowed Priority Claim** means a Priority Claim pursuant to §507, exclusive of §507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

7.     **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code; to the extent such Priority Claim is or becomes an Allowed Claim.

8.     **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

9.     **Appeal Period** means the time for filing a notice of appeal as specified in Rule 8002 of the Bankruptcy Rules.

10.     **Assets** means each and every item of Property of the Estate and every interest of the Debtor and its respective Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; and such rights under the policy with Liberty Mutual for crime insurance; (d) all of the Debtor's books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases, including such rights under the policy with Liberty Mutual for crime insurance.

11.     **Bankruptcy Case(s)** means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code, Case Numbers 6:24-bk-04600-LVV.

12.     **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, including any amendments thereto, in effect during the Bankruptcy Cases.

13.     **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

14.     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

15.     **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in the Bankruptcy Case.

16.     **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

17.     **Buyer** shall refer to Ivanhoe Park Brewing Co. or the highest bidder for the Sale Assets.

18.     **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

19.     **Causes of Action** means any and all of the Estate's and the Debtor's actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to the right to recover transfers voidable or recoverable under

Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtor, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtor not otherwise approved by the Bankruptcy Court; provided, however, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan. This expressly includes any and all claims under any valid insurance policy including but not limited to any cyber insurance policy, crime insurance policy or policies.

20.     **Claim** means, "claim" as defined in Bankruptcy Code § 101(5).

21.     **Class** means any Class into which Claims or Interests are classified pursuant to the Plan.

22.     **Class 1 Claim, Class 2 Claim, Class 3 Claim,** etc., shall mean the specific Class into which Claims or Interests are classified in the Plan.

23.     **Closing Date** means the date on which the Debtor completes the Sale.

24.     **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129 and/or § 1191.

25.     **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

26.     **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

27.     **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

28.     **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

29.     **Creditor(s)** means "Creditor" as defined in Bankruptcy Code § 101(1).

30.     **Debtor** refers to **CELEBRATION TITLE GROUP, LLC.**

31.     **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

32.     **Disposable Income** shall have the same definition and meaning as the same term is defined under 11 U.S.C. § 1191(d).

33.     **Disputed Claim** means every Claim or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

34.     **Disputed Equity Interest** shall mean an Interest in the Debtor which is not an Allowed Interest and which has not been disallowed by a Final Order or the Bankruptcy Court.

35.     **Distribution** means a distribution under the terms of the Plan to the Holders of Allowed Claims.

36.     **Effective Date** means the first Business Day following expiration of the Appeal Period with respect to the Confirmation Order without the filing of a notice of appeal of the Confirmation Order; provided, however, that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtor may elect in writing to permit the Effective Date to occur notwithstanding the pendency of the appeal. The Effective Date shall automatically

occur without further order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

37.     **Estate(s)** means the bankruptcy estate of the Debtor created under Bankruptcy Code § 541.

38.     **Equity Interest** means any and all issued or authorized equity interests, common stock, stock options, membership interests and warrants in the Debtor.

39.     **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

40.     **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rule 3022 closing the Bankruptcy Case after the Estate has been fully administered.

41.     **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

42.     **Holder** means the holder of a Claim or Interest, as applicable.

43.     **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124.

44.     **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

45.     **Interest(s)** means an issued or authorized outstanding equity interest, membership interest, warrant or warrants for the issuance of such equity interests, or any other equity instruments in the Debtor.

46.     **Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of

such interest is challenged by the Debtor or any other party with stand to bring such challenge.

47.      **Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

48.      **Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

49.      **Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtor; provided, however, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

50.      **Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

51.      **Person** means "person" as defined in Bankruptcy Code § 101(41).

52.      **Personal Property** means all tangible personal property of the Debtor.

53.      **Petition Date** means August 29, 2024, the date on which Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

54.      **Plan** means this Amended Chapter 11 Plan of Reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

55.      **Plan Payments** means payments made by the Debtor pursuant to the terms of the Plan.

56.      **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

57.      **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

58.      **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

59.     **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

60.     ***Pro Rata*** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

61.     **Professional** means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

62.     **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

63.     **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules, including any amendments to such Proof of Claim.

64.     **Property of the Estate** means "property of the estate" as defined in Bankruptcy Code § 541.

65.     **Reorganized Debtor** means the Debtor upon the Effective Date of the Plan.

66.     **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

67.     **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

68.     **Subchapter V Trustee** means L. Todd Budgen who was appointed pursuant to 11 U.S.C. § 1183.

69.     **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests, which are not impaired within the meaning of Bankruptcy Code § 1124.

70.     **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

71.     **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. Seq*. and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II – BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

The Debtor is a Florida limited liability company that offers title insurance and escrow services and was established in 2016. As of the Petition Date, the Debtor conducts its business at 950 Celebration Blvd., Ste. D, Celebration, Florida 34747. The Debtor is wholly owned by Celebration Holdings, LLC, which is in turn owned by Ms. Amanda C. Douglas ("Ms. Douglas"). The Debtor is managed exclusively by Ms. Douglas as manager.

For years, the Debtor ran a successful title company. It expanded over the last several years, taking out loans to assist with expansion and operations to great success. However, during this same period of time, Mr. Douglas's mother, Ms. Kathryn Gail Douglas was the Debtor's bookkeeper and financial operations manager ("Kathryn"). In 2023, First American Title, the Debtor's underwriter, conducted an audit of the Debtor's financials and escrow accounts. Soon thereafter, and as a result of the audit, the Debtor discovered that Kathryn had stolen or diverted over $3,000,000.00 from the Debtor by, *inter alia*, inflating payroll by hundreds of thousands of dollars periodically.

When confronted, Kathryn vanished.  She once rented Ms. Douglas' personal home, but Ms. Douglas also discovered it was also cleared out by Kathryn. The Debtor and First America are engaged in candid discussions regarding the circumstances of the vanished funds and are actively working together to resolve this issue, notably by suing Kathryn.

The Debtor filed the instant case to preserve the going concern value of its business operations, to liquidate and recover causes of actions and other assets and to otherwise pay and resolve the Debtor's stakeholders.

## ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated under Articles V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.  <u>Secured Claims</u>.

    1.  <u>Class 1 – Allowed Secured Claim of United States Small Business Administration</u>.

    2.  <u>Class 2 – Allowed Secured Claim of U.S. Bank, N.A.</u>

B.  <u>Unsecured Claims</u>.

    1.  <u>Class 3 – Allowed General Unsecured Claims</u>.

C.  <u>Equity Interests</u>.

    1.  <u>Class 4 - Equity Interests</u>.

## ARTICLE IV – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS.

A.  <u>Administrative Expense Claims</u>.

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Expense Claim shall be paid in full on the Effective Date, upon the Debtor's receipt of the Sale Proceeds as the case may be, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is

determined by Final Order of the Bankruptcy Court. Allowed Administrative Claims shall be paid from cash on hand as of the Effective Date, through pre- and post-petition retainers, from the Sale Proceeds from the sale of the Debtor's Personal Property or proceeds from the Debtor's continued operation and collection on accounts receivable. The Debtor estimates Administrative Claims to be approximately $25,000.00 before deducting pre-petition retainers. It is anticipated that the Administrative Claims will be held by the Debtor's bankruptcy counsel and the Subchapter V Trustee.

    B.    <u>Priority Claims.</u>

    1.    <u>Allowed Priority Tax Claims.</u>

Except to the extent that the Holder and the Debtor (or Reorganized Debtor as the case may be) have agreed or may agree to different treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payment(s) equal to the Allowed Amount of such Claim on the later of the Effective Date or on such dates as a respective Priority Claim becomes Allowed after Allowed Administrative Expense Claims.

    2.    <u>Allowed Priority Claims.</u>

Except to the extent that the Holder and the Debtor have agreed to different treatment, in full satisfaction of each Priority Claim, exclusive of Priority Tax Claims under 11 U.S.C. §507(a)(8), each Holder of an Allowed Priority Claim shall receive payment of such Claim in full on the Effective Date

    3.    <u>United States Trustee Fees</u>.

If applicable, all fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course. The Debtor, which is proceeding with its reorganization under

Subchapter V, does not anticipate the accrual of any United States Trustee Fees in connection with the Bankruptcy Case.

## ARTICLE V – TREATMENT OF IMPAIRED CLASSES.

    A.    <u>Determination of Allowed Amounts.</u>

    Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim.  In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief. The designations and labeling used for each Claim and in each Class of Claims to describe the treatments therein are not conclusive and are not to be construed as final determinations of the type or amount of such Claim. ***Further, notwithstanding any Claim amount included in the proposed Plan treatment outlined below, Debtor reserves all rights with respect to such Claims and whether such Claims are Allowed in the amounts specified***.

    Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to Article VII, Section I, of this Plan, and other applicable law.

There are four (4) classes of Claims and Interests. Treatment for all Claims and Interests is as follows.

B.    Secured Claims.

1.    Class 1 – Allowed Secured Claim of the Small Business Administration.

Class 1 consists of the Allowed Secured Claim of the United States Small Business Administration (the "SBA") which is secured by a first priority lien on the Debtor's tangible and intangible assets more particularly described in Proof of Claim No. 3 (the "Class 1 Collateral"). In full and final satisfaction of its Allowed Class 1 Claim, the SBA shall retain its lien against the Class 1 Collateral and shall receive payment of its Class 1 Claim from the liquidation of all the Debtor's assets upon which its claim of lien attaches, which is the Debtor's bank account funds (defined under  Article VI, Section 1) in full satisfaction, or as the indubitable equivalent of, its Class 1 Claim, after the payment of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims. Upon payment of the Class 1 Claim in full, the Allowed Secured Claim of the SBA shall be fully satisfied, and any associated liens and UCC-1 filings (if any) shall be released, withdrawn or terminated. Any balance of the Allowed Claim of the SBA is that not paid in Class 1 shall be treated as an Allowed Class 3 Claim. Class 1 is Impaired.

2.    Class 2 – Allowed Secured Claim of U.S. Bank, N.A.

Class 2 consists of the Allowed Secured Claim of U.S. Bank, N.A. ("US Bank"). The Class 2 Claim is secured by a lien upon certain financed equipment described in Proof of Claim No. 4 (the "Class 2 Collateral"). In full satisfaction of its Allowed Class 2 Claim, US Bank shall receive the Class 2 Collateral as the indubitable equivalent of its Class 2 Claim. Class 2 is Impaired.

C.    Unsecured Claims.

1.    Class 3 – Allowed General Unsecured Claims.

Class 3 consists of all Allowed General Unsecured Claims against the Debtor,

including the Claim filed by First American Insurance which shall be deemed allowed for all purposes. In full satisfaction of their Allowed Class 3 Claims, and except in the case of any Claim filed by First American Insurance, which reserves its exclusive rights to proceeds of the crime insurance policy issued by [    ] and any proceeds arising from any litigation brought on behalf of the Debtor or the Reorganized Debtor for any acts contributing to the property stolen or diverted precipitating the commencement of these proceeding, on the Effective Date Holders of Allowed General Unsecured Claims against the Debtor shall receive a *pro rata* share of the liquidation value of all the Debtor's assets (defined under Article VI, Section 1) in full satisfaction, or as the indubitable equivalent of, the Class 3 Claims, after Payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, and Allowed Class 1 Claims. Class 3 is Impaired.

      C.      <u>Equity Interests</u>.

      1.      <u>Class 4 – Equity Interests.</u>

Class 4 consists of all equity interests in the Debtor. All Class 4 Interests in the Debtor shall be cancelled on the Effective Date. After Payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, and Allowed Class 3 Claims, any remaining amounts from the liquidation of Debtor's assets will be distributed to Holders of Allowed Class 4 Interests on a *pro rata* basis. Class 4 is Impaired.

## ARTICLE V – UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

      A.      <u>Assumption or Rejection of Unexpired Leases and Executory Contracts</u>.

To the extent the Debtor rejects any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to Section 365 of the Code arising from the

rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. Allowed Claims resulting from rejection shall be Class 3 General Unsecured Claims, respectively, except as otherwise provided herein. The Debtor shall have until the completion of the hearing on Confirmation to assume or reject any unexpired lease or executory contract. In the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date. The Debtor's position is that the executory contracts listed on its Schedule of Executory Contracts filed pursuant to Rule 1007 are the only executory contracts to which the Debtor was a party as of the Petition Date which may be assumed or rejected.

**ARTICLE VI – MEANS OF IMPLEMENTATION.**

 A. <u>Liquidation of Debtor's Assets</u>.

  The Debtor shall only exist for the limited purpose of liquidating its assets as outlined herein. To fund Plan Distributions, Debtor shall liquidate all its assets, including: (1) cash sitting in a Truist Checking Account ending in 2655 (valued at $27,134.23); (2) Causes of Action (valued at $3,680,000.00); an (3) Employee Retention Tax Credit (valued at $774,000.00) for the benefit of all Allowed Claimholders; and any insurance policy, including that policy issued by [    ] for crime insurance. The Debtor's cash will be liquidated upon the Effective Date. The Causes of Action will be disbursed immediately upon any recovery, after payment of all Administrative Claims associated with the pursuit of such causes of action. Lastly, the Debtor anticipates the receipt of the Employee Retention Tax Credit in January 2025 and will disburse the proceeds immediately upon receipt.

 B. <u>Business Operations</u>.

  The Plan contemplates the Debtor will not operate other than to recover the property as set forth in this Plan.

C.    Funds Generated During Chapter 11.

Funds generated from the Debtor's operations through the Effective Date will be used for Plan Payments; however, the Debtor's cash on hand as of the Confirmation Hearing will be available for payment of Administrative Expenses. For a complete report detailing the funds generated from the Debtor's operations through the Effective Date, please refer to the monthly operating and financial reports filed with the Bankruptcy Court in the Bankruptcy Case.

D.    Management and Control and Operation of the Debtor.

The management and operations of the Debtor will continue to be overseen by the Debtor's current managing member until the Effective Date. After the Effective Date, Debtor's current managing member will serve as Liquidating Agent for the Debtor and will: (i) cause the Debtor to investigate and pursue any Causes of Action or Objections to Claims (if any); (ii) cause the Debtor to distribute its liquidated assets in accordance with the Plan; (iii) wind down the Debtor's affairs; and (iv) take such actions as are necessary to effectuate the Plan.

E.    Procedures for Resolving Disputed Claims.

1.    Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtor, or Reorganized Debtor as the case may be, shall have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the Plan. All objections commenced prior to the Confirmation Date shall be finished by the Reorganized Debtor.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that either of the Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan.  Except as set forth in the Plan, upon Confirmation the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that either Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

2.    Estimation of Claims.

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.      Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

4.      Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Reorganized Debtor such that the Holder of such Allowed Claim receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Distributions which may be attributable to a Disputed Claim will be held by the Reorganized Debtor and retained until the Disputed Claim is resolved, and funds retained may be redistributed to holders of Allowed Claims in the event a Disputed Claim is not ultimately deemed to be Allowed. Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order.

5.      Allowance of Claims and Interests.

(i)      Disallowance of Claims.

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a Cause of Action under  §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor.  Debtor reserves and shall have the exclusive right and authority to bring any Causes of Action before and after the Effective Date.

(ii)      Allowance of Claims.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

6.      Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan and designation of impairment shall govern.

# ARTICLE VII – MISCELLANEOUS.

A.   <u>Authority to Effectuate the Plan</u>.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan.

B.   <u>Post-Confirmation Status Report</u>.

Pursuant to the Plan, within 90 days of the entry of the Confirmation Order, the Debtor will file a status report with the Bankruptcy Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation.  The Bankruptcy Court may schedule subsequent status conferences in its discretion.

C.   <u>Preservation, Prosecution, and Defense of Causes of Action</u>.

Except as set forth herein, upon Confirmation, the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, including all pending adversary proceedings, whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against the Debtor or Bankruptcy Estate, except as otherwise modified by the Plan. The Reorganized Debtor shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Reorganized Debtor and post-judgment collections; provided, however, that the Reorganized Debtor shall be authorized at any point in any litigation (a) to enter into such settlements as the Reorganized Debtor deem to be in the best interest

of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with

Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation

if the Reorganized Debtor deems such action to be in the best interest of creditors without

Bankruptcy Court or other approval. The pursuit of any Cause of Action outside of Bankruptcy

Court shall not result in the waiver, release or relinquishment of the Debtor's right to address

Claims through the Plan. For the avoidance of doubt, all pre-petition Claims asserted against the

Debtor which are reduced to judgment (if any) shall be addressed solely through the Plan and not by

any means which may exist under non-bankruptcy law.

     D.    <u>Retention of Professionals</u>.

     The Reorganized Debtor may retain and compensate professionals on such terms as

it deems reasonable without Bankruptcy Court approval.

     E.    <u>Conditions to Effectiveness</u>.

     The Effective Date shall occur upon the conditions set forth in this Plan.  However,

the Effective Date shall not occur until the entry of the Confirmation Order by the Bankruptcy

Court in form and content acceptable to the Debtor and expiration of the appeal period with respect

to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however*,

that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the

appeal, the Debtor may in writing elect to permit the Effective Date to occur notwithstanding the

pendency of the appeal.  The Effective Date shall automatically occur without further order of the

Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein

have been met. The Reorganized Debtor shall file a *Notice of Effective Date* with the Bankruptcy

Court within three (3) days of the Effective Date.

     F.    <u>Police Power</u>.

Nothing in this Article VII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

G.    Revocation and Withdrawal of this Plan.

The Debtor reserves the right to withdraw this Plan at any time before entry of the Confirmation Order. If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

H.    Modification of Plan.

The Debtor may seek to amend or modify the Plan in accordance with § 1193 of the Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

I.    Retention of Jurisdiction.

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court. Confirmation of the Plan acts as consent of the

parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

    1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

    2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained by the Debtor by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business without a Bankruptcy Court order; provided, further, however, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

    3.    Any adversary proceedings or contested matters or other Causes of Action brought by the Debtor or the Reorganized Debtor, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 4 Claims;

    4.    All controversies and disputes arising under or in connection with the performance of obligations created under the Plan, and the right to Distributions under the Plan;

    5.    The enforcement and interpretation of the provisions of the Plan;

    6.    To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code § 1193, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.     To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.     To hear and determine any action or controversy by or against the Reorganized Debtor or concerning or relating to the performance of obligations created under the Plan.

J.      <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

K.      <u>Confirmation Without Acceptance by all Impaired Classes: "Cramdown."</u>

Debtor reserves its right to confirm using cramdown procedures set forth under 11 U.S.C. §§ 1129(b) and 1191(b).

L.      <u>Notices</u>.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

Counsel for Debtor.

Justin M. Luna, Esq.
Latham, Luna, Eden & Beaudine, LLP
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801

United States Trustee:

Office of the United States Trustee

c/o Jill E. Kelso, Esq.
George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

Subchapter V Trustee:

L. Todd Budgen, Esq.
P.O. Box 520546
Longwood, FL 32752

M.    Manner of Payment.

Pursuant to 11 U.S.C. § 1194, the Reorganized Debtor shall make all payments and

distributions required under the terms of this Plan regardless of whether the plan is confirmed under

§§ 1191(a) or 1191(b).

N.    Compliance with Tax Requirements.

In connection with this Plan, and to the extent applicable, the Reorganized Debtor in

making Distributions shall comply with all tax withholding and reporting requirements imposed on

them by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such

withholding and reporting requirements. The Reorganized Debtor may withhold the entire

Distribution due to any holder of an Allowed Claim until such time as such holder provides to the

Reorganized Debtor, the necessary information to comply with any withholding requirements of any

governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the

appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor

the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

      O.     <u>Transmittal of Distributions to Parties Entitled Thereto</u>.

      All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made.  Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records. If any Distribution is returned by mail or otherwise, the Reorganized Debtor may keep said returned Distribution money.

      P.     <u>Distribution of Unclaimed Property</u>.

      Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an

Asset to be distributed and conveyed to Holders of Class 3 Claims in accordance with the provisions of this Plan.  However, checks issued by the Reorganized Debtor with respect to Allowed Class 3 Claims will be null and void if not cashed within sixty days of the date of issuance and such unclaimed distribution shall vest with the Debtor.  Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtor by the Holder of the Claim with respect to the check originally issued.

Q.     Transfer Taxes.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery, or recording of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by, or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

R.     Default and Remedies of Allowed Claimholders.

In the event any Allowed Claimholder is not timely paid in accordance with the Plan, such Allowed Claimholder shall provide the Debtor and the Subchapter V Trustee with written notice of said payment default (the "Default"). The Debtor shall have fifteen (15) Business Days from receipt of the Default notice to cure the Default. If the Debtor fails to timely cure the Default, the Allowed Claimholder may seek relief from the Bankruptcy Court to enforce this Plan, file for such relief related to the Plan in any state court of competent jurisdiction or such further relief that may be available to such Allowed Claimholder under Federal or applicable state law or as stated

elsewhere in the Plan. Allowed Claimholders shall seek relief from the Bankruptcy Court first before filing for relief in any other competent jurisdiction.

## VIII.    <u>CONCLUSION</u>

If the Plan is ***not*** confirmed and consummated, the Debtor believes the most likely alternative is a liquidation of its assets under Chapter 7 of the Code. In a Chapter 7 liquidation, a Chapter 7 trustee would incur additional Administrative Expenses liquidating assets that would be paid before any distribution to creditors and would result in no additional value to claimholders after a significant devaluation of the Debtor's assets.

**RESPECTFULLY SUBMITTED** this 10th day of December 2024.

/s/ *Justin M. Luna*
**Justin M. Luna, Esq.**
Florida Bar No. 0037131
**Benjamin R. Taylor, Esq.**
Florida Bar No. 1024101
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
Bknotice1@lathamluna.com
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile:  407-481-5801
*Attorneys for Debtor*

# <u>EXHIBIT B</u>

Approximate Distribution Schedule

| Class 1 | TBD |
|---|---|
| Class 2 | TBD |
| Class 3 | TBD |
| Class 4 | TBD |
| Administrative Claims | Paid on Effective Date or by Agreement. |
| Quarterly Trustee Fees | N/A |